Patel v. Rishi Patel Mr. Wilensky If it pleases the Court, my name is Frank Wilensky and I am here on behalf of the appellant. The case before the Court today is a bankruptcy case. It was originated in the U.S. Bankruptcy Court for the Northern District of Georgia in 2012. We're well aware of that. And the real issue here is whether a bankruptcy court has the authority to annul or retroactively grant relief from automatic stays in the wake of the Supreme Court decision and the Acevedo-Feliciano decision. Exactly, Your Honor. So, why don't we get to it. The Court is, of course, familiar with the U.S. Supreme Court decision in Acevedo, which in essence, bottom line, held that federal courts, including district and bankruptcy courts, may not enter nunc protunc or relation back type orders. Section 362d.1 gives bankruptcy courts statutory authority to grant relief from an automatic stay by terminating, annulling, modifying, or conditioning the stay for cause. That is precisely what the 362d.1 holds, Your Honor. So, the question becomes... All the Supreme Court decided in Acevedo was that a district court could not use a nunc protunc judgment to validate orders that a Puerto Rico court had entered while the case had been removed. Exactly. Right? Exactly. Well, in essence, it is what we have here. If I might go just back to the facts in this case, that which gives rise to the case is a family split up. We'll call it that. Rather than a husband and wife, it's two brothers who were in business together for a long time. Successfully, the 2008 Great Recession caused a decline in business, disputes between the brothers, and a split of the parties. So, the bankruptcy case, which ensues in 2016, finds the debtor in the case, Mr. R.C. Patel, participating in a state court-generated arbitration process. There is no question but that, based on the facts found by the court, which are not... the lower court, which are not in dispute here, the bankruptcy case was pending and therefore the automatic stay was in effect. Have you been counsel during that time? I'm sorry? Were you counsel during that process? Was I counsel? Were you counsel during that process? No, I was not. No, I was not. I found it surprising that the automatic stay was not raised until the end of the arbitration process rather than at the beginning. It's altogether surprising when you read all of the facts found by the lower court that the lawyers involved in the arbitration knew full well that the bankruptcy case was pending, wrote memos about whether or not they can or should go forward, and decided to move forward with the arbitration, notwithstanding the existence of the stay. Now, the real question... Was there not any assertion ever from your client that the automatic stay blocked the  arbitration? No. It was not necessary. It is automatic. It is there. It doesn't just disappear. It is an existing fact. It's there, and it's in my back pocket, and when the arbitration doesn't go the way I want it, gosh, you know what I've got? I've got the automatic stay. I mean, that's what this looks like. This looks like total gamesmanship, and the bankruptcy court sees that and says, uh-uh. The bankruptcy court, in its order going back to 2022, finds that there was indeed a violation of the automatic stay, and that, without question, the effort of those who participated in the arbitration process vis-à-vis the debtor in this case, not the rest of his family who were also parties, but the debtor in this case, that with respect to that occurrence, that the situation was void ab initio. Exactly the same thing that the Acevedo court found with respect to the effort by the state court in Puerto Rico to enter orders before there had been a remand, if I'm understanding those facts correctly. So we're not talking about whether or not one party or the other should have moved for stay relief. We're talking about the ability of a bankruptcy court, the ability of a bankruptcy jurisdiction here, to enter an order, non-proton, relating back. Yeah, that's not conferring jurisdiction on a different court that lacked it at the time. That's the Acevedo decision. There's clear statutory authority for a bankruptcy court to annul the stay for cause, and it seems to me that when you're faced with the gamesmanship that this record reflects, that that's cause that supports what the bankruptcy court did, and it's just totally distinguishable from the Supreme Court decision that you relied upon. What am I missing? The Supreme Court decision very carefully states what is and is not allowable non-proton, and it holds that if the court is attempting to correct some inadvertence, that it's okay to use the non-proton order. That is what the holding is. The case law, and there's very little case law out there. The Supreme Court recognized that there is this limited authority. It just didn't think that that authority applied in that case. I also think something that's interesting about bankruptcy law is that it is more concerned with equity by far than really any other part of the law as I see it in the modern era, and this seems to be an example of where the bankruptcy court's equity authority allows it to annul when it finds that the automatic stay was not being respected by the party that was supposed to benefit. I'm sorry. Can you take a look at the Merriman case, Henry Merriman from the Ninth Circuit? Yes. What are your thoughts about that case? Because to me, the logic in that case really makes sense in terms of distinguishing Acevedo and the purpose of the statutory provision. It's another frequently state law-based process to go forward. I mean, that's basically what happened here. Bankruptcy often involves matters that happen in the state. As the Chief said, it's not like jurisdiction is actually transferred to another state court. So tell me why Merriman isn't an authority that we should consider. Merriman is a decision of the BAP, the Bankruptcy Appellate Panel in the Ninth Circuit, it arises within a bankruptcy case. Stay relief is sought by a party claiming to be a creditor as a result of a wrongful death case. So obviously, the emotional part about this is much stronger than what we are dealing with here. Are you saying it's different because of the emotional valence? No. The legal reason for the Merriman decision in my reading of that case is simple. They find that the inclusion of the language concerning annulment in 362D1 grants the bankruptcy court jurisdiction to hear and conclude annulment far beyond what the Acevedo case would appear to allow the court to do. If the Acevedo court limits the non-proton type order to situations where one is correcting an inadvertence, that's not what occurs. That is not what occurred in Merriman. That was not what occurred in the Telus case, the case that we rely upon. What Acevedo is about is about jurisdiction in removal cases, okay? Not this case. No. It concerns whether or not a state court which does not have jurisdiction can enter orders when it thinks it has jurisdiction. In other words, the bankruptcy case in Acevedo was dismissed, but a remand had not been made to the state court. The state court entered certain orders which are being challenged as being void ab initio, the very same position that we are taking here. The state court here did not enter an order annulling the automatic stay, right? The state court could not enter an order annulling the automatic stay. The state court here entered an order of a judgment on an arbitration matter finding the debtor in a bankruptcy case liable for $2 million in the face of the automatic stay. Now, the facts of the case are what they are, and the court made its finding. The real issue before this court, though, as Your Honor pointed out at the very beginning, is whether or not the bankruptcy court has that jurisdiction in light of the Acevedo decision of the U.S. Supreme Court. Okay. Let's hear from your attorney. Good morning, Your Honors. Michael Roble for the appellees. In the Acevedo case, the U.S. Supreme Court said it was going to speak both colorfully and plainly, and it did so. In our brief, we spoke somewhat colorfully when we said the U.S. Supreme Court does not hide elephants in mouse holes, a commonly used phrase in appellate decisions. I think that's what's being urged on appeal is that this court invalidate wording within a specific part of the U.S. Code, Title XI, Section 362, pertaining to the automatic stay, which this court has previously found provides for retroactive relief. That's inclusion of the term annulling in addition to the term terminating. We would not need to have both the term annulling and the term terminating in the statute if they didn't have separate meaning. And this court has found that the separate meaning for annulling is that it grants retroactive relief. The Acevedo case, as this court has already pointed out, did not deal with Section 362 of Title XI. It dealt with the removal statute, 28 U.S.C. 1446, which states, quote, the state court shall proceed no further unless and until the case is remanded. So there is an express determination by statute. There's not jurisdiction. Proceedings must stop. In contrast, under Section 362 of Title XI, the bankruptcy court has the power to annul, to retroactively grant relief from the bankruptcy stay. Let's just toss the argument on the other side that your client did not abide by the federal rules of bankruptcy procedure in requesting annulment because they didn't file a formal motion to that effect. The trial court rejected that appropriately on the basis that the bankruptcy code does not require a motion with regard to a request for annulment. Rather, Section 362 says that there may be a request, which is different wording than used elsewhere in the bankruptcy code, specifically with regard to adversary proceedings and contested matters that fall in the 9000 portion of the federal rules of bankruptcy procedure. You typically proceed under a motion. However, in Section 362, you can proceed with a request. And the record, the factual record, which has not been challenged, there's no appeal from the facts, showed something like a dozen instances in which my client did request annulment from the stay. Notably, that included in a pretrial order, which was amended by motion of both parties more than once, and no one ever disputed that it was part of the pretrial order of what would be determined when the court actually heard the evidence and considered the arguments. And what brought us to this situation, right, is after the arbitration, your adversary then comes to the bankruptcy court, right, and wants enforcement, wants the state to be used to stop enforcement of the arbitration award. Correct, Your Honor. Early response to that that the bankruptcy court said. Correct. And that was not Mr. Walensky's doing. As he noted, he was not representing the debtor at the time of the arbitration. There was a lawyer who testified in front of the bankruptcy court, Mr. Parker, who did represent the debtor at the time of the arbitration. And the court took the term poison pill that shows up a couple of times in the bankruptcy court's order from Mr. Parker's testimony. Now, the bankruptcy court did not create that phrase. Mr. Parker said he intended to use the bankruptcy as a poison pill, where if they prevailed, they would be able to enforce the award. If they lost, they would come in and say, you can't go forward, there was a bankruptcy. So that was actually Mr. Parker's strategy in his term to have it be a poison pill. And, Your Honor, additionally with regard to the facts, the bankruptcy court noted numerous times throughout the court's decision with numerous citations to evidence that my clients were not pursuing claims against the debtor. To the contrary, it was the debtor who was pursuing claims against them, claims that he had not listed in his bankruptcy schedules, which should have been property of the bankruptcy estate. The court found that that was one of the violations of the stay. Typically, you will think about a stay violation as someone going after the debtor. The court explained it's also a violation of the stay for a debtor in a Chapter 7 case where there's a separate trustee who controls the estate assets for that individual debtor to try to collect assets that have gone into the estate under the trustee's control. That's what the bankruptcy court found that the appellant was doing when he pursued his own claims in the arbitration. So the trial court actually found there was a stay violation by the appellant, and that was part of the reason the court said it was appropriate to annul the stay. The parties had put substantial effort into the arbitration. It took several days. We put substantial effort into the bankruptcy court trial, which took five days over three separate settings, and the court was not going to have to have us all go back again to try to defeat claims that the appellant brought, which the arbitrator ruled on the facts had no merit and which no one has challenged on appeal. There's no disputing the factual resolution from the bankruptcy court. Your Honors, that really is the heart of this matter. If annulment of the stay is not affirmed, we would be back arbitrating claims initially arbitrated almost nine years ago. This case has had a long, long tortured process of going through the bankruptcy court, the district court, and now before Your Honors. It has also led to staying of my clients, enforcing the arbitration award in various aspects. There were other parties involved in this, not just the debtor. Part of what the bankruptcy court found was that the debtor pursued this as a tactic to try to protect his family members from having the award enforced, which has happened. We have not been able to move forward for almost nine years. So we are asking this court to affirm the district court and the bankruptcy court and to order that the stay is annulled, as there is no express statutory basis to deny that the bankruptcy court had that authority and also that it does not control, given that it rose under a very distinct and different statute the U.S. Supreme Court did not apply in this instance. Thank you, Your Honors. Thank you, Mr. Roble. Mr. Walensky, say a few words. Yes, sir. Very briefly, the automatic stay of Section 362 of the bankruptcy code is the bedrock principle of bankruptcy law. It provides the debtor with a breathing space and promotes the preservation of a debtor's assets, not only for himself but for creditors as well. It does not appear that any appellate-level court, other than the Merriman decision of the BAP panel out in California, has considered the effect and applicability of the Acevedo decision on the various Federal courts. It must be noted that the jurisdiction of the bankruptcy court, as this court well knows, is highly limited. The jurisdiction of the bankruptcy court, in fact, is only that which is made available to it through its association with its connection to the U.S. District Court. The bankruptcy courts are mere adjuncts of the U.S. District Court. To point to a statute, the Bankruptcy Law 362D1, and say that's where the jurisdiction of the court comes from, it doesn't. It comes from the orders entered in each of the districts referring cases filed under the bankruptcy laws to bankruptcy judges for hearing and determination. The appellee argues that the language of 362D1, reference to annulling the automatic stay, is the statutory source of the bankruptcy court's jurisdiction. It couldn't be. It's possible that the bankruptcy court has... I'm sorry? I'm sorry. I would urge that the court reverse. Thank you. Thank you. We're going to move to our last case. Thank you.